MARTIN LEINWEBER

v.

THE FOREST CITY INSURANCE COMPANY.

*Fire Insurance—Action on Premium Note—Alleged Fraud of Insurance Agents—Evidence—Rebuttal—Instructions—Error without Prejudice.*

1. In an action on a promissory note given for the premiums on policies of insurance, to which the defense was that the company's agent fraudulently misrepresented to defendant the contents of the application signed by defendant at the time the note was given, the weight of the evidence being strongly against the truth of the allegations of fraud, this court declines to interfere with verdict for plaintiff.

2. The refusal of the court to admit evidence on a question which, by other evidence in the case, was conclusively settled against the party excepting, does not constitute reversible error.

Leinweber v. Forest City Ins. Co.

3. Although instructions given to a jury might, as abstract propositions of law, require qualification, yet such qualifications may be rendered unnecessary by undisputed evidence in the case.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Mason County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

·Messrs. H. R. NORTHRUP and JOSIAH JACKSON, for appellant.

Messrs. WALLACE & LACEY, for appellee.

PLEASANTS, P. J. This suit was brought on a promissory note of appellant to appellee for $375, dated August 10, 1882, and due September 1, 1883. It was agreed that under the general issue, any good defense might be shown as under an appropriate special plea. There was a trial by jury, verdict for plaintiff, and judgment thereon for $413.

The note was given for the premium on six policies of insurance, numbered respectively, in regular order, from 22,122 to 22,127 inclusive, for $12,000 in all, and running for five years from the date of the applications, which was the same as that of the note. Appellant was a large farmer, owning some twelve hundred acres of land, on which, besides his own, he pastured a considerable number of cattle belonging to other parties. The first in order of these policies was for $10,200, and covered, among other things, "his horses, mules, colts and cattle on the farm or in the neighborhood," insuring them for $3,200 against loss by "fire, lightning and tornado."

In April, 1883, a storm killed twenty-four head of cattle on the place, of which only two belonged to appellant. The loss on these was adjusted at $60, and settled by a credit of that amount indorsed on the note July 26, 1883; but because the company declined to pay him for the others, and for no other reason, according to his own statement, he refused to pay his premium note, or any part of it.

The defense rested on the allegation that the company's

agents who took it, promised him insurance upon all the stock on the place, to whomsoever belonging, and fraudulently represented that his application, prepared by them, was so made; that he signed those papers in consideration of and reliance upon that promise and representation; that he is a German, unable to read or write English, and did not know, until the company refused to pay for the agisted cattle killed, that the application and policy did not cover them; and that within a reasonable time thereafter he rescinded the contract and returned all the policies.

It appears that the arrangement for insurance was made with Mr. Sherratt, then the general agent, and since January, 1887, assistant secretary of the company. Mr. John O'Dowd was with him, but what particular relation he sustained to it was not stated. He was not a witness on the trial, and Mr. Sherratt did not know where he was, but testified that though he might have said something during the preliminary conversations, the whole of the negotiation and transaction was between appellant and himself. After they had gone over the place together and looked at the buildings and other property, of which he made memoranda, they returned to appellant's dwelling house, and there the papers were made out by Sherratt and signed by appellant. Several others were there, who heard different portions of the conversation at different places, and testified to their recollection of its substance.

It would certainly appear from their statements that appellant in the course of it did inform these agents that his own stock was mortgaged and that he was pasturing some belonging to other parties. As one puts it, he "objected" to insuring, for those reasons, and they told him they could insure it all for him notwithstanding, and that they wanted to do so. But there is less evidence to show that such was the understanding finally arrived at before the papers were signed, and still less that either of said agents represented, after the application was made out, that it contemplated the insurance of stock on the place belonging to other parties.

It is clear that no such insurance is contemplated by the

application, or by the policy, which strictly corresponds with it.  Sherratt testified that appellant did not say he wanted to insure any such stock, and with special emphasis that "no representations were made by him that this insurance would cover any property except his own;" and further, that he read to him each of the six applications in full, together with the note, before they were signed.  Appellant himself, on his first cross-examination, was asked this question : "At the time they took the applications for this insurance didn't the agent read the applications over to you?" and his answer was "Yes, sir."  Mr. Hiliken, his hired man, testified that he read over one of them to him before it was filled out, and remarked to him at the time that he "thought it pretty good insurance," a thought and remark that were not sensible nor probable if the paper was only a blank form.  At a later stage appellant, being recalled, stated that "they read only a part of them and before they were filled out"—a useless and senseless proceeding.  He admitted that his hired man and members of his family could have read them to him, but he did not ask them to do so.  No witness mentioned an act or word of these agents which, upon a review of the transaction, appears to have been intended or of itself calculated to prevent his having them read to him, unless it be their statement that it was all right.  He received this policy, with the others, about the 21st of August, 1882, kept it in his possession at his home until the adjustment, eleven months afterward, was then informed by the adjuster that it did not cover stock belonging to others, and that for the loss of his own the company would pay by crediting the amount on this note—all of which was testified to by himself—and thereupon, on the 26th of July, 1883, with all this information and knowledge, he voluntarily signed and delivered the following receipt: "Received of the Forest City Insurance Company, of Rockford, Illinois, sixty dollars, in full of all demands for loss or damage by fire, lightning or tornado, to property insured under policy No. 22,122, and destroyed by either lightning or tornado on the 22d of April, 1883."

If there was any fact or circumstance tending to explain,

qualify or impair the effect of this receipt as a ratification of
the contract of insurance and an admission of his obligation
upon the note according to its tenor, and therefore also as evi-
dence that there had been no fraudulent misrepresentation
made or deceit used to obtain it, we do not find it in this
record.

These were questions for the jury, and an error that would
justify the disturbance of a verdict for the plaintiff upon this
evidence, must be gross indeed. We discover none that
appears to be material.

It is said the court erred in refusing, upon the plaintiff's
objection, to admit parol evidence that Sherratt himself gave
the description, in the application, of the barn therein men-
tioned to be insured for $500; that he saw it and knew its
proper description, but so misdescribed it as a "frame barn,"
when, in fact, it was made of "poles set in the ground and
thatched over with prairie grass," that defendant could not
have recovered for it, in case of loss, under the policy. This
alleged misdescription is said to show a fraudulent intention
not to pay.

The description or misdescription was given in an answer
among others, in writing, and signed by the defendant. There
was no claim of misrepresentation by the agents in respect to
it, and therefore the writing was conclusive upon the ques-
tion, who gave it. Defendant had already testified that his
reason for refusing to pay his note was that the company
had refused to pay him for the loss of cattle of Harry Hughes.
If the testimony excluded was proper at all, it was as part of
his defense in chief; but it was not offered until after the plaint-
iff's evidence in rebuttal had been closed. The barn intended
having been seen by the company's agents at the time of
taking the application, could have been sufficiently identified
in case of its loss, though it was not properly described as a
frame barn ; and therefore such a misdescription was no evi-
dence of a fraudulent intent. We think there was no serious
error in its rejection.

Defendant was asked, "What was said about insuring the
cattle against death from any cause?" which was objected to

and excluded.   It is said that was the kind of insurance prom-
ised, and that there was a failure of consideration to the
extent of the difference in value between such, and the lim-
ited kind he got.   If this was error it certainly did no harm;
for notwithstanding the exclusion of that particular question
at that time, the record shows evidence enough on the point
in view, to settle it against him.   Thus Matthews says, "The
agent stated they wanted to insure it against fire or anything
else;" but the defendant said, some time after the question
above was excluded, "I understood that the stock was insured
against fire, lightning and storms.   I wanted the stock insured
against storms.   The other property was not."   Hiliken,
his hired man, says:   "The agents said it was insurance
against loss by fire, lightning and storms."   It has been
already observed that defendant made no complaint except
that he was not insured against loss of cattle other than his own.

The court sustained objections to other questions calling
for what was said in the preliminary talk, to show the actual
agreement, holding it to have been merged in the writing.
We think on that point the court was right.   Mercantile
Ins. Co. v. Jaynes, 87 Ill. 199.   But the matter was received
upon the question of fraud in reducing it to writing and obtain-
ing defendant's signature thereto, and the jury were instructed
with sufficient liberality to him, as to its bearing in that direc-
tion.   Among others, the following was given:

"In this case if you should believe from the evidence that
the plaintiff, by it agents, made false and fraudulent statements
in regard to the insurance of the defendant's property,
knowing them to be false, for the purpose of getting the note
offered in evidence, and that the defendant believed them to
be true and relied upon them and was thereby induced to
execute said note, then he would have the right, when he
received such policies, to repudiate such contract, and would
not be bound thereby, provided he rescinded the contract as
soon as he received the policies or within a reasonable time
thereafter."

Another included the proposition that "if the plaintiff had
failed to execute a part of its promises given to the defendant

which induced him to execute the note," the jury should allow to the defendant a deduction to the extent of such failure of consideration.

Those for the plaintiff relating to the legal effect of the receipt, and of a failure of defendant to ascertain the contents of the policies when he received them, or within a reasonable time thereafter, as abstract propositions might need to be qualified, but the evidence in this case, which is undisputed, made such qualification unnecessary.

We think no injury was done to defendant by any error of the court, and that the verdict was right.

*Judgment affirmed.*